Our last case this morning is Winnemucca Indian Colony v. United States, 2024-1108. Mr. Cisneros. Yes, Your Honor. Good morning. Almost afternoon. May it please the Court. I just wanted the record to reflect that I represent the Winnemucca Indian Colony. I'm very honored to do that. And the Chairman, Eric Majera, is on the Court. Marlene McGeer is on the Court. And Joseph Killip, they're members of the Tribal Council. Obviously, this is a complex case that's been briefed quite a bit. We've got lengthy briefs. I'm going to try and cover a couple of things that I think are extremely important to the Winnemucca Indian Colony's case. We've got this 1500 holding, which it seems to me raises the question of whether the operative facts, not just the facts generally, but the operative facts, are overlapping between the District Court action and the Court of Federal Claims action. There's no issue in the Court of Federal Claims action about the standing of your group to bring this now that the BIA has recognized your group as representing the colony, right? That is correct, Your Honor. It actually was raised in their initial motion to dismiss, but later withdrawn by them, by the government. So it no longer is an issue. However, it was erased originally. And that was going to be my first argument, Your Honor, which is obviously that the 1500 argument we're dealing with here, the Federal District Court case, has really nothing to do with the Court of Federal Claims case. Well, the problem is putting aside the standing issue. As I read Counts 5 and 6 of the complaint, there does seem to be an issue there, an allegation that somehow the government breached its duty to the colony by its actions with respect to government recognition. So there is some overlap there. I'm not clear from the complaint how central or significant that allegation is. Could you help me on that? Sure, absolutely, Your Honor. So at this point, it's not significant to the complaint. It actually, as you've mentioned, Your Honor, the difference between operative facts versus background facts. Background facts are not going to make them the same type of case. The alleged dispute, which is actually never a dispute, it was never a leadership dispute in this colony, but the fact that there was issues in relation to BIA failing to recognize the properly seated counsel, because of that, they suffered damages. That's the only relevance it has. This case is about the damages. Well, that seems to involve some overlap, no? Well, it would if there was an actual dispute over leadership. There never really was, Your Honor. No, but what 5 and 6 are saying is that there was a dispute about leadership and that the government reached its trust obligation by failing to resolve that dispute in your favor. That seems to be the allegation. And in that one respect, it seems to me that there is overlap between the complaint here and what was going on in the district court. Right, and I can appreciate that, Your Honor. But my response to that would be that in relation to the leadership dispute, there never was. Leadership disputes are specifically when you have two groups who are members of a tribe arguing over who should be the leader. I'm just not understanding your response. I'm sorry. I'm asking about operative fact overlap. And here you are in the complaint arguing that the failure to recognize was a trust breach, and that seems to overlap with what happened in the district court. Now, it's only one part of one claim. I understand that. But in that one respect, I mean, there does seem to be overlap between the two actions, right? Well, again, I would argue, Your Honor, that that's background fact related to the fact that we had a tribe. Regardless of who the leadership was, which we know who the leadership was, they were denied certain things that we've alleged in the complaint. So they were denied that regardless of the leadership issue, which, again, we contend that there was no leadership dispute for the reasons we've stated in our complaint. But having said that, regardless of who the leadership was, the tribe suffered this damage. So the leadership issue is tangential. It really has nothing to do with whether or not- Could you turn to the actual language of the complaint to maybe help center us as you answer the questions posed by Judge Stein? Sure. So I believe the pertinent claims that he's pointing to are in appendix pages 90 through 100. All right. And we're talking about five and six, correct? Yes, that's what I heard in terms of the question that he posed to you.  And so those are dealing with, obviously, the various rights of ways and power lines, utilities, things of that nature that have been placed upon the tribal lands. And they've been placed upon the tribal lands with no compensation to the tribe whatsoever. But what I want you to focus in on just right now is his question in terms of potentially overlap with respect to operative facts or basically the standard that's applicable. So I appreciate your giving us background, but as you probably could tell, he's read it all, and we've read the pertinent information. We just want the answer to this question in particular. And that question is what, Your Honor? So my understanding is right now the question is for these items. Is there overlap with the legislation? Let's take this as an example. Let's look at page 99 of the appendix. And this is in count five, and it's paragraph 190. It says the BIA, by its arbitrary, capricious, and unreasonable failure for 14 years to recognize a council, blah, blah, blah. That sounds very much like what was going on in the district court. Right. In the sense, Your Honor, that there was that dispute, but it has nothing to do with the loss that occurred here for the tribe itself. The purpose of the district court case was to force people to- So we could just say, okay, that there's no claim here about a breach of trust obligation, or to the extent there is, it's barred by 1500 and go on and address the other claims, right? That's correct, Your Honor, yes. So again, though, I mean, the claim, the district court case had to do with only one issue, and that had to do with forcing the BIA to decide who the leadership was. That's all it was. We're not asking the Court of Federal Claims to do that in any way, shape, or form in this case. It has nothing to do with our claims. The claims have to do with the BIA's failure to ensure their trust obligations are met, and the met based upon the items that we list in our complaint, which the damages we suffered related to the rights of ways and also the utilities and things of that nature, like the diversion of water. Those were all the damages that the tribe suffered. Regardless of whether they recognized the counsel or not, those are the claims they suffered because BIA failed to actually ensure that their resources and their natural resource rights were maintained. So, in other words, even if a leadership had been decided way back since 2000, the fact that BIA did not ensure that the Winnemuck Indian Colony's resources were being maintained properly, they breached their trust obligations. Okay, could you address the statute of limitations issue? Because it seems to me that the continuing claims doctrine may preserve actions, preserves claims with respect to actions that took place after 2014. But as to actions that took place before 2014, such as the building of the road, that would seem to be barred by the statute of limitations, wouldn't it? Well, again, that has to do with two different arguments we made in our brief, Your Honor. So we argued, number one, that was a statute of limitations issue. We argued that there are continuing violations. And there were two separate cases. Okay, but that would cover claims with respect to things that happened after 2014. Correct. But the building of the road, as an example, didn't happen after 2014. Correct. There was one road that was built after 2014. Yeah, but with roads that were built before 2014. So the roads that were built before 2014, we believe that this case is very analogous to the case we cited, the Shoshone case we cited, which is 672F3-1021, had to do with gas and mineral rights. When companies went back out and forth, they continued the violation. Here, there's a continued violation for a number of reasons. Yes, the road. Okay, I understand that. But I'm really asking about what happened before 2014. You can't sue on that, it seems to me, and that there isn't any reason that the claim didn't accrue and is barred by the statute of limitations to the extent it's pre-2014. If Your Honors go with the theory that we provided in relation to continuing violations, you're correct. We can only go back six years from filing of the complaint, but we believe that we can file the complaint and the statute of limitations be continued after the 2014 date is for a variety of reasons, for the roads, for example. The roads are not just put down and then that's it. No, no, I understand that. Let's stick with pre-2014. You argue that the tribal governance wasn't established so you couldn't sue, but it was recognized by BIA in 2014. Correct. Right? Right, and we filed this action within six years of that letter where the BIA actually finally recognized the tribal council. So we filed within that six-year statute of limitations from that point. And that's our second argument is that everything should have been told up to that letter because there was no recognized tribal council. But what happened before 2014 is still barred by limitations because if you look at 2501, which in the case of disability gives you three years to file, that seems not to help you under these circumstances because you didn't file within three years of the 2014 recognition. You filed in 2020. Right, and we have not gone under—our theories have not gone under legal disability anymore. We have gone under two things. One was the continuing violations. So every time there's a continuing violation, statute of limitations resets. So we did in that six years. We will have our claims, and we understand that we can only go back six years if you adopt our continuing violations argument, which for each of the issues we have, Your Honor, I can explain why there's a continuing violation. I understand. Right. Now, the second argument we made in relation to statute of limitations was, well, that statutes were told up until the moment we got that letter. The Winnemucca Indian Colony got the letter stating that we now recognize this council. And there's actually—it was interesting because in the motion to dismiss that the government first filed, they cited the NOCAS Indian Tribe v. Zinke case, which is 2017 WL-1957076. And in that case, it was a district court case. But the case basically said the court doesn't have the right to decide who the tribal council is. They don't have the right to do that. So although there may be not a standing issue, there's an authorization issue. Whether the tribal council is authorized to file that claim. So up until 2014, the court cannot come in and say, you're the right council, you can bring this claim. And, in fact, the court—and, again, it was cited by the government—says, when the BIA recognizes an entity as a tribal leadership, federal courts must do the same. Logically, therefore, the Congress must also be true. Where BIA refuses to recognize tribal leadership, federal courts must do the same. So that case, and it cites the Timbershaw case, which is an appellate court case, and the Cayuga Nation case, and they're in our brief, what it's stating is that until a tribal leadership is identified by the BIA, because the court cannot, then the statute of limitations can't run. They can't bring a claim. It's impossible for them to bring a claim. You want to save three minutes? You're well into your rebuttal time. You can continue or save it. No, I will reserve my time, Your Honor. Thank you very much. We'll give you three minutes. I appreciate that. Thank you. Mr. Richmond. Good morning, Your Honors. May it please the Court. Ben Richmond for the United States. So I just want to emphasize that there are multiple paths for the court to affirm the judgment of the CFC. You can affirm on- Let's talk about 1500. So, I mean, it would seem as though there are many claims here which don't involve any overlap with the district court action with respect to the operative facts. And there may be some claims where there is some overlap, but the government seems to say that there's overlap as to all claims. I'm having a hard time seeing that. So, Your Honor, I mean, the calling here, 12 pages of its complaint were devoted to these allegations. Yeah, yeah, yeah. There's a lot of extraneous stuff there, and our cases have made clear that, you know, race, gestile allegations, I guess we'll call them that, don't count. It's only operative facts. Right. I don't understand how the tribal governance dispute is an operative fact with respect to most of these claims. So I think, Your Honor, you're right that counts 5 and 6, I mean, they specifically address the leadership dispute here, claim counts 5 and 6. So I think section 1500 is a clear bar on those counts. On those counts in their entirety or just aspects of those counts? On the counts in their entirety. I mean, count 5 alleges that the BIA's failure for 14 years to recognize the council has affirmatively conveyed the possessed interest in the land held by trespassers was to require the colony to expend funds to remove the trespassers. I mean, the 14 years is a direct reference to the leadership dispute that's at issue in the District of Nevada litigation. That's the basis of the claims. With respect to counts 1. 1500 isn't case specific, though, is it? It relates to claims, which are counts. Is that right? So, yeah, it relates to. In other words, if there's partial overlap, that doesn't disqualify the whole case. Is that right? Well, I think the styling of a certain counter complaint shouldn't affect the section 1500 bar. The answer to that is yes, isn't it? It doesn't cover the whole complaint. If there are counts that don't involve any overlap. That's true. If there are counts that don't involve overlap, then the section 1500 bar wouldn't apply. And there's no issue here in this case about the standing of this group to bring suit, right? No, no, not in the appeal. I do want to emphasize that counts 1, 2, and 3 do have facts that are operative that overlap the Nevada suit. So if we look at the complaint, counts 1, 2, and 3, they seem to be based on allegations that the colony failed to approve rights-of-way or receive certain payments. That's in Appendix 94 through 97. So I think the key issue is, who in the colony had those responsibilities? And the colony is making allegations about harms within the past 10 years. That's in Appendix 94. So I think the CFC reasonably held that those claims are related to the leadership dispute at issue in the Nevada dispute. Just to make sure that I'm level-set with you on this, is it that the claims need to share substantially the same operative facts as opposed to just overlap? I want us to be precise regarding what we need to look at. Yeah, so Tohono O'odham is a very broad standard, substantially the same operative facts. It's not supposed to create some sort of pleading exercise to evade the Section 1500 bar. If there's the same underlying facts, a common factual basis, the Section 1500 bar applies. So recognizing that we have had this discussion about the fact that it would not bar the complaint in its entirety, is it only Counts 5 and 6 that would potentially be barred by Section 1500? I think all of the counts, all of the counts still alive in this appeal can be barred. As Your Honors were discussing, Counts 5 and 6 can be barred because of those specific references and the reliance on the 14-year leadership dispute. But Counts 1, 2, and 3, the allegations in the complaint are about the colony's failure to approve certain rights-of-way and also the colony's failure to approve payments. So again, the key issue is who in the colony had those responsibilities. But look, after 2014, when the BIA recognized this group as representing the tribe, I mean, statute of limitations would appear to bar pre-2014 actions. So by 2014, they were the recognized group, and if there was a trust violation after 2014, that doesn't involve any question of who was in charge of tribal governance, right? If the allegation was specific to post-2014, when the colony, when we recognized the leadership of the colony, then that's true. But I don't think those allegations necessarily appear in the complaint. And potentially, if there was a case that they do, that would be Counts 5 and 6. So I think, well, yeah, so I think our position is, excuse me, I have to correct myself, our position is that... Sorry, I'm just going to switch to statute of limitations. But our position is Counts 5 and 6 is... I get it, don't worry. I have been in your shoes where you're having to answer questions that maybe you weren't necessarily thinking you'd have to answer. But I think it'd be useful for us if you could give us your answer on 1500 before you move on to statute of limitations. Yeah, so our answer on 1500 is it's a complete bar to 1, 2, 3, 5, and 6 because it's substantially the same operative facts. Why is it the same operative facts as to say Counts 1, 2, and 3, which don't seem to... I mean, to the extent that they're post-2014, why is there any necessity there to resolve the same issues as in this report? So I don't think 1, 2, and 3 are post-2014. 1, 2, and 3 are about events that happened long ago. And so for 1, 2, and 3, I think the bar is that there's this overlap... Well, it's fair to say that to the extent that the complaint alleges wrongs happening after 2014, then there's no 1500 issue with respect to that. I think that's correct. If it's alleging conduct post-2014, post-leadership dispute being resolved, then the Section 15 bar wouldn't apply. Okay, thank you. And I also just want to briefly make the forfeiture point. The argument about the same operative facts was not raised in the CFC, so we don't think it's appropriate to raise here. So I'll move on to the statute of limitations arguments,  So the colony's claims here, they concern alleged encroachments or occupations on colony land that commenced more than six years ago before the colony filed suit in November 2020. The government here submitted ample undisputed evidence about the factual predicates for these claims. So maps, deeds, satellite images, surveys, this is at Supplemental Appendix 43 through 511. None of those facts have been contested here. And so really all we're arguing on statute of limitations is a set of exceptions to try to move around when the claims accrue. If we reach those exceptions, our argument is that the continuing claims doctrine does not apply here. So the continuing claims doctrine, it's when claims are inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages. This is from Brown Park. That's not the case here, where we have these single encroachments. I mean, the construction of a power line, the construction of a road, the construction of a power station, that's not inherently susceptible into being broken down into multiple different causes of action. The colony is relying on Shoshone here. But in Shoshone, each new purported entry under a purported invalid lease was associated with the extraction of additional trust resources. So each of those entries, each of those extraction of trust resources allowed for a new claim and cause of action, and that was susceptible to being broken down into a series of different claims. But here, where there are single, discrete, overt events, I don't think the continuing claims doctrine applies. Even to the extent the colony is making arguments about later effects, later adverse effects that are traceable to the original single alleged wrong, that does not fall within the continuing claims doctrine. Let's give an example. Suppose a road is constructed before 2014, but after 2014, there's road maintenance, and they're alleging that the road maintenance constitutes trespass. That wouldn't be barred by the statute of limitations, would it? No, but I don't think that's the situation we have here. We have allegations about single physical encroachments and later effects like a car going along the road. That's my impression of what the allegations amount to here. It's just not inherently susceptible to being broken down like a case like Shoshone. I think extending the continuing claims doctrine to a case like this, it's kind of like an exception that swallows the rule for these overt physical encroachments. This power line was constructed decades ago, according to our documentary evidence. I also want to talk briefly about the recognition issue and whether recognition of tribal leadership results would hold the statute of limitations. Our position is it does not. That's because a new claim doesn't accrue each time a tribe elects new leadership. That would essentially nullify the statute of limitations for a lot of claims like this. It might fall in the disability category in 2501, right? It might, but then there were three years, in which case a claim wasn't filed during those three years. I also just want to emphasize that the Wasson Group brought suits in 2011 and 2013 in the name of the colony. It wasn't under disability here. That was the 2011 suit filed in the District of Nevada and the 2013 suit filed in the CFC. I think both of those suits show that the colony wasn't under any type of disability in the statute of limitations accrued prior for these claims. Is there anything in 1500 that would prevent us from telling the Court of Federal Claims to allow this case to be repleted to scrub out the overlap material and limit themselves to claims that don't involve tribal governance issues? Not to my knowledge. I think the language of Section 1500 is clear and Tohono O'odham is clear. The statute should be applied as written. It's a strict rule, but here they're overlapping operative facts. Dependency in the Nevada suit I think demands dismissal. But if we said you've got to scrub out the overlap claims, you've mixed up the two together, for example, in five and six, then if they scrub out the overlap, then there's no 1500 problem? I think if this Court didn't affirm dismissal as to certain claims on Section 1500, then it could remain for further proceedings. So unless the Court has any questions about Count 3, which is related to this alleged affirmative fiduciary duty, which we think does not exist under Arizona v. Navajo Nation, I think that's clear Supreme Court precedent. I just want to emphasize the character of the multiple grounds on which this case can be affirmed. I want to talk to the Court about our best case for dismissal for each of the different counts here. Our best case for dismissal of Counts 1 and 2, these are overt physical acts like the construction of a road or a power line. The best case for dismissal is the statute of limitations because those overt physical acts were constructed decades ago, at least six years beyond when the suit was filed. Our best case for dismissal of Count 3, breach of trust, on the water diversion count, that could be statute of limitations. It could also be the CFC jurisdictional grounds because no money-mandating fiduciary duty exists. Our best case for dismissal on Counts 5 and 6 is Section 1500, and that's because of the overlap of the operative facts where those counts are directly addressing the leadership dispute, the 14 years in which the BIA did not recognize the leadership of the colony. Count 8 should be affirmed based on the lack of CFC jurisdiction as well because there's no valid claim for money damages here. So unless the panel has any further questions, for these reasons, the judgment of CFC should be affirmed. Thank you, Mr. Richman. Mr. Cisneros has three minutes. Yes, thank you. Yeah, I want to begin because I want to make sure I'm perfectly clear on the questions, and I think I understand Your Honors better now. But in relation to 1500, the best way to determine whether background facts or not is exactly what Your Honor suggested, is if we scrubbed all of that language related to the leadership dispute, the claims would absolutely still survive. Our claims are for money damages related to the breach of trust by the BIA, the government. But not a breach of trust in failure to recognize. Correct, Your Honor. That is not a part of this, and we're not suing for damages related to their failure to recognize this tribal council. This tribal council has now been recognized by the BIA, and in fact, none of the claims in there are requesting the Court of Federal Claims judge to in any way, shape, or form make any type of determination about leadership. Whereas the district court case was only about the court forcing the BIA to recognize leadership, because of course the district court could not recognize leadership. The second thing I want to get to is continuing violation. We actually put in our complaint in relation to the electric substation, which I believe is Claim 3 or 2. The electric substation just recently, the road got flooded, had to be repaved so they can get access to the substation. The substation's constantly being, of course, maintained. Roads, same thing. Roads only exist for so long they need to be re-asphalted. There's no doubt these are implicit in our claims, and those are the continuing violations. The diversion of the stream continues to this day. In fact, half of Winnemucca, the city of Winnemucca's water, is coming from water that should be going to the Winnemucca Indian colony because it was diverted, and it's continuing to be diverted to this day and maintained in different ways. The trespass issue in relation to the people who had leases for homes that were on reservation, those families were not just necessarily one family and they lived there forever. No, many passed away and heirs came in and took over those properties. These are the types of facts we need to explore on this continuing violation, but there's no doubt in every single aspect of resource or right-of-way or the water diversion, there has been acts and violations that BIA has done nothing to help in relation to these resources within the last six years or at least six years prior to the filing of the complaints, Your Honors. So I wanted to make sure that you understand that there are continuing violations and we have planned them. Other than that, are there any other questions for Your Honors? I guess not. Thank you, counsel. Both counsel, the case is submitted.